1  ADLESON, HESS & KELLY, APC
   Phillip M. Adleson, Esq. (CSB# 69957)
2  padleson@ahk-law.com
   Duane W. Shewaga, Esq.  (CSB# 116837)
3  dshewaga@ahk-law.com
4  577 Salmar Avenue, Second Floor
   Campbell, California  95008
5  Telephone:  (408) 341-0234
   Facsimile:  (408) 341-0250
6
7  Attorneys for Defendants
   UTAH FINANCIAL, INC.
8  DAVID L. SMITH
   WAYNE MORRISON
9

10                 **UNITED STATES DISTRICT COURT**

11                **NORTHERN DISTRICT OF CALIFORNIA**

12                      **(San Jose Division)**

13

14  RICK YU and SERLYN YU,                  Case No.:  C 08-01771-RMW

15          Plaintiffs,                     **DEFENDANTS UTAH FINACIAL, INC.'S,**
                                            **DAVID L. SMITH'S AND WAYNE**
16  vs.                                     **MORRISON'S SUPPLEMENTAL REQUEST**
                                            **FOR JUDICIAL NOTICE IN REPLY TO**
17  UTAH FINANCIAL, INC., erroneously sued  **PLAINTIFFS' OPPOSITION TO THEIR**
    as a California corporation; GREENPOINT **MOTION TO DISMISS PURSUANT TO**
18  MORTGAGE FUNDING, INC.; DAVID L.        **RULE 12(b)(6)**
    SMITH, WAYNE MORRISON, et al.,
19
          Defendants.                       Date:       July 25, 2008
20                                          Time:       9:00 a.m.
                                            Courtroom:  6 (4th Floor)
21                                          Judge:      Hon. Ronald M. Whyte

22      **COMES NOW** defendants Utah Financial, Inc., David L. Smith and Wayne Morrison

23  who request that the court take judicial notice of the following matters which are of public

24  record in reply to plaintiffs' opposition to their motion to dismiss pursuant to Rule 12(b)(6) as

25  follows:

26      1.  Plaintiffs objected to defendants' request that the court take judicial notice of the

27  on-line records of the CA Dept. of Real Estate indicating that plaintiff Rick Yu is a licensed

28  real estate salesperson, which is available at http://www2.dre.ca.gov/PublicASP/pplinfo.asp.

ADLESON, HESS
& KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM
©ADLESON, HESS &
KELLY, APC, 2003

1 In response to plaintiffs' objections, judicial notice is hereby requested of the "History

2 Certification" for plaintiff Rick Yu, executed by Deputy Real Estate Commissioner for the

3 State of California, a copy of which is attached hereto as Exhibit "A," indicating that plaintiff

4 Rick Yu is in fact a licensed real estate salesperson.

5     2. Plaintiffs also objected to defendants' request that the court take judicial notice of

6 the on-line records of the Santa Clara County Recorder's Office indicating that plaintiffs have

7 been involved in a number of loan transactions secured by their real property prior to their

8 loan with Greenpoint Mortgage Funding. In response to plaintiffs' objections, judicial notice is

9 hereby requested of the deeds of trust executed by plaintiffs Rick Yu and Serlyn Yu as

10 trustors, in favor of the Municipal Employees Credit Union of San Jose, Inc., Chase

11 Manhattan Bank, Bank of America, VirtualBank, Wachovia Mortgage Corporation, Citibank,

12 and Wells Fargo Bank recorded January 27, 2000, March 6, 2001, June 20, 2001, June 23,

13 2004, October 28, 2004, January 4, 2005, and April 21, 2005 respectively with the Recorder

14 for the County of Santa Clara, copies of certified copies of which are attached hereto as

15 Exhibit "B."

16     3. The original certified copies of the above documents will be made available at the

17 hearing in the above-entitled matter.

18 Dated: May 28, 2008                        Respectfully submitted,

19                                      ADLESON, HESS & KELLY,
A Professional Corporation

20

21                                   By:    /s/ *Duane W. Shewaga*

22                                       Phillip M. Adleson, Esq.
Duane W. Shewaga, Esq.

23                                       Attorneys for Defendants
Utah Financial, Inc., David Smith,
and Wayne Morrison

24

25

26

27

28

ADLESON, HESS
& KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM
©ADLESON, HESS &
KELLY, APC, 2003

STATE OF CALIFORNIA — BUSINESS, TRANSPORTATION AND HOUSING AGENCY                    ARNOLD SCHWARZENEGGER, *Governor*

**DEPARTMENT OF REAL ESTATE**
2201 Broadway
P. O. Box 187000
Sacramento, CA, 95818-7000
(916) 227-0906



April 29, 2008

RE: RICK YU - S/01830655

### ****HISTORY CERTIFICATION****

| Received Date | HISTORY |
|---|---|
| 11-21-07 | Conditional salesperson license originally issued pursuant to Section 10153.4 B & P Code as of 10-13-07 |
| | No employing broker as of 10-13-07 |
| | Mailing address is P.O. Box 86, Gilroy 95020 as of 10-13-07 |
| | Activated in the employ of Robert Harold Reichert, 7520 Eigleberrt Street, Suite 100, 1502 Eagles Nest Lane, Gilroy 95020 as of 11-21-07 |
| | Conditional salesperson license expires 04-13-09 |
| | Salesperson license expires 10-12-11 |

PRIOR DISCIPLINARY ACTION:          NONE

I, Debra Blizzard, the Official Custodian of Records, hereby certify the foregoing is true and correct as extracted from the record of the Department of Real Estate this 29th day of April, 2008.

*Debra Blizzard*
Deputy Real Estate Commissioner
of the State of California

EXHIBIT "A"

FL50983

**RECORDING REQUESTED BY**

**AND WHEN RECORDED MAIL TO**

**Municipal Employees'
Credit Union of San Jose, Inc.
140 Asbury Street
San Jose, California 95110-2105**

DOCUMENT: 15134168

*00151341688*

| Titles: 1 / Pages: 2 | |
| --- | --- |
| Fees.... | 12.00 |
| Taxes... | |
| Copies.. | |
| AMT PAID | 12.00 |

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Fidelity National Title Ins.

RDE # 009
1/27/2000
8:00 AM

SPACE ABOVE FOR RECORDER'S USE ONLY

## SHORT FORM DEED OF TRUST

Order No.: 1875916-SED          Regional No.:

This Deed of Trust, made this          **18th**          day of          **JANUARY, 2000**          , between

**Rick Yu and Serlyn L. Yu, husband and wife, as Joint Tenants**          , herein called **TRUSTOR**,

whose address is    2846 Rainwood Ct., San Jose, CA 95148

**T.D. SERVICE COMPANY**, a California Corporation, herein called **TRUSTEE**, and
**MUNICIPAL EMPLOYEES CREDIT UNION OF SAN JOSE, INC.**, A California corporation, herein called **BENEFICIARY**,
**Witnesseth:** Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE,
that property in          **Santa Clara**          County, California, described as:

Lot 59, as shown on that certain Map entitled, "Tract No. 6474", which Map was filed for record in the Office of the Recorder of the
County of Santa Clara, State of California, on May 01, 1979 in Book 440 of Maps, page 45.

Assessor's Parcel No: 654-50-067

In the event of sale, transfer, conveyance, or alienation of said property, or any part thereof, or any interest therein, whether
voluntary or involuntary, Beneficiary shall have the right of acceleration, at its option, to declare the note secured by this deed of
trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable, including
any prepayment charge provided for therein. No waiver of this right shall be effective unless in writing. Consent by the Beneficiary
to one such transaction shall not constitute a waiver of the right to require such consent to succeeding transactions.

TOGETHER WITH the rents, issues, and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and
conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents,
issues and profits.
For the purposes of Securing:    1.    Performance of each agreement of Trustor incorporated by reference or contained herein.
2.    Payment of indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in
the principal sum of    **$30,000.00**          executed by Trustor in favor of Beneficiary or order.
3.    Payment of additional sums and interest thereon as may hereafter be loaned to Trustor, or his successors or assigns, when
evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

Page 1 of 2

EXHIBIT "B"

**To Protect the Security of This Deed of Trust, Trustor Agrees:**  By the execution and delivery of this Deed of Trust and the note secured hereby that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded on May 10, 1978 in the counties set forth below, and that the Recording Location of the Official Records in the office of the county recorder where said property is located, noted below opposite the name of such county, viz.:

| COUNTY | VOL | PAGE | COUNTY | VOL | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alpine | 29 | 619 | Humbolt | 1488 | 646 | Amador | 329 | 171 | Calaveras | 470 | 116 | Contra Costa | 8830 | 937 | Alameda | Re 6386 Im, 209 |
| Inyo | 231 | 83 | Mariposa | 182 | 624 | Butte | 2282 | 399 | Imperial | 1415 | 1481 | Del Norte | 217 | 24 | Los Angeles | Inst. #78-498403 |
| Lassen | 331 | 850 | San Benito | 430 | 180 | Colusa | 469 | 170 | Modoc | 254 | 362 | El Dorado | 1627 | 562 | Monterey | Reel 1241 Page 210 |
| Merced | 2122 | 338 | San Luis Obispo | 2069 | 204 | Fresno | 7028 | 584 | Orange | 12669 | 206 | Mendocino | 1146 | 682 | San Diego | File Page #78-180303 |
| Mono | 242 | 578 | Siskiyou | 818 | 269 | Glenn | 628 | 653 | Solano | 1978 | 35916 | Riverside | 1978 | 92574 | San Francisco | Liber C566 Pg 869 |
| Napa | 1080 | 358 | Stanislaus | 3052 | 249 | Kern | 5109 | 1815 | Sonoma | 394 | 13 | Sacramento | 7805-10 | 934 | San Mateo | Reel 7742 Page 319 |
| Nevada | 849 | 394 | Sutter | 925 | 178 | Kings | 1116 | 338 | Tehama | 748 | 686 | San Bernardino | 9429 | 1145 | Santa Barbara | Inst. #78-21136 |
| Placer | 1973 | 153 | Tulare | 3530 | 743 | Lake | 632 | 670 | Trinity | 191 | 286 | San Joaquin | 4395 | 944 | Sierra | Vol. 78 Bk.172 |
| Plumas | 287 | 689 | Tuolumne | 531 | 665 | Madera | 1395 | 694 | Ventura | 5113 | 277 | Santa Clara | D658 | 525 | | |
| Shasta | 1520 | 42 | Yolo | 1305 | 680 | Marin | 3370 | 620 | Yuba | 667 | 39 | Santa Cruz | 2908 | 714 | | |

(which provisions, identical in all counties, are printed on the reverse side of Page 1 hereof) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; to observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to property, obligations, and parties set forth in this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA        }SS.

On _January 13, 2000_  before me
_Brenda Buffington_, Notary Public  personally appeared

Rick Yu and Serlyn L. Yu

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Brenda Buffington Notary Public_

*Signature of Trustor*

Rick Yu

Serlyn L / Yu

BRENDA BUFFINGTON
Commission # 1083718
Notary Public — California
Santa Clara County
My Comm. Expires Jan 21, 2000

(This area for official notarial seal)

Page 2 of 2

STATE OF CALIFORNIA } SS.
County of Santa Clara

I, REGINA ALCOMENDRAS, Clerk Recorder of the above
entitled County, do hereby certify that the annexed is a full, true
and correct copy of the original

*SHORT FORM DEED OF TRUST*

recorded in my office.
WITNESS my hand and Official Seal this

7Th day of MAY 2008
By JMCabalum , Deputy

Jennys Cabaluna

*Chicago Title*
*Bv - 889752-Link*



DOCUMENT: 15581250

| | |
|---|---|
| Titles:1 / Pages: 8 | |
| Fees.... | 30.00 |
| Taxes... | |
| Copies.. | |
| AMT PAID | 30.00 |

*0015581250*

RDE # 006
3/06/2001
8:00 AM

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Chicago Title

Parcel #
**65-4-50--067**

Prepared By:
**LAURA LEWIS**

Record and Return Address:
**Chase Manhattan Bank USA, N.A.
C/O Chase Manhattan Mortgage Corp.
MK Ferguson Plaza, 1500 West Third Street
Cleveland, OH 44113-1406
ATTN: Central Document Control Unit**

Reference # 010521909480
Servicing # 916347397

## CALIFORNIA
## CLOSED-END DEED OF TRUST

THIS DEED OF TRUST is made on ___February 28, 2001___ . The trustor is:
**RICK YU and SERLYN L. YU, HUSBAND AND WIFE**

The trustee is **Douglas E. Miles** _____ ("Trustee"). The beneficiary is:
**Chase Manhattan Bank USA, N.A.** , a national banking association whose address is:
**C/O Chase Manhattan Mortgage Corp, 2000 Crow Canyon Place, San Ramon, CA 94583**
In this Deed of Trust, the terms "you," "your" and "yours" refer to the trustor(s). The terms "we," "us" and "our" refer to the beneficiary. You owe us the principal sum of
**One Hundred Five Thousand Eight Hundred and 00/100** _____ **Dollars**
(U.S. $ **105,800.00** ). This debt is evidenced by your note ("Note") dated the same date as this Deed of Trust, which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
___**February 29, 2016**___ . This Deed of Trust secures to us: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under this Deed of Trust to protect the security of this Deed of Trust; and (c) the performance of your covenants and agreements under this Deed of Trust and the Note. For this purpose, you irrevocably grant and convey to Trustee, in trust, with power of sale, the following described property located in **SANTA CLARA** _____ County, California, and more fully described in Exhibit A, which is attached hereto and made a part hereof, which property is more commonly known as:
**2846 RAINWOOD COURT, SAN JOSE, CA 95148-2659** _____
("Property Address");
\*THIS DEED OF TRUST IS JUNIOR AND SUBORDINATE TO THAT CERTAIN DEED OF TRUST IN THE
AMOUNT OF $275,000.00 IN FAVOR OF CHASE MANHATTAN MORTGAGE CORPORATION AND
RECORDING CONCURRENTLY HEREWITH\*

CALNDT (Rev. 03/29/00)                    Page 1 of 7

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Deed of Trust. All of the foregoing is referred to in this Deed of Trust as the "Property."

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

1.   **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Note and all other charges due under the Note.

2.   **Payments of Taxes and Insurance.** You will pay, when due, all taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). We specifically reserve to ourself and our successors and assigns the unilateral right to require that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

3.   **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Note and Section 1 will be applied by us as permitted under the Note.

4.   **Prior Deed of Trusts; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust, or other security instruments with a lien which has priority over this Deed of Trust, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Deed of Trust.

5.   **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices.

If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 7. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance.

You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Deed of Trust, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

   **6.     Preservation and Maintenance of Property; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. If this Deed of Trust is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

   **7.     Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Deed of Trust, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Deed of Trust or any advance under the Note or this Deed of Trust, appearing in court, paying reasonable attorneys' fees, paying any sums which you are required to pay under this Deed of Trust and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Deed of Trust. These amounts shall bear interest from the disbursement date at the rate established under the Note and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Deed of Trust, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

   **8.     Inspection.** We may make entries in and upon the Property to inspect same at any reasonable time and upon reasonable notice.

   **9.     Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Note and paragraph 1 or change the amount of such payments.

   **10.     You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Deed of Trust granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**11.    Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Deed of Trust shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Note, but is obligated to pay all other sums secured by this Deed of Trust; and (c) agrees that we and anyone else who signs this Deed of Trust may agree to extend, modify, forbear or make any accommodations regarding the terms of this Deed of Trust or the Note without such person's consent.

**12.    Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**13.    Notices.** Unless otherwise required by law, any notice to you provided for in this Deed of Trust shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you.

**14.    Governing Law; Severability.** The extension of credit secured by this Deed of Trust is governed by federal law, which for the purposes of 12 USC § 85 incorporates Delaware law. However, the interpretation and enforcement of this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

**15.    Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Deed of Trust.

**16.    Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Deed of Trust) may be sold one or more times without prior notice to you.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Deed of Trust. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Note. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

**17.    Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Deed of Trust, "Hazardous Substances" are those substances defined as

toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Deed of Trust, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

18. **Acceleration; Remedies.** We shall give notice to you prior to acceleration following your breach of any covenant or agreement in this Deed of Trust (but not prior to acceleration under Section 15, unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and sale. If the default is not cured on or before the date specified in the notice, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust without further demand and may invoke the power of sale and any other remedies permitted by applicable law. We shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 18, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the outstanding principal and interest, and costs of title evidence.

If we invoke the power of sale, we shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of our election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. We or the Trustee shall mail copies of the notice as prescribed by applicable law to you and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on you, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Either we or our designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warrant, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees, as set forth above; (b) to all sums secured by this Deed of Trust; and (c) any excess to the person or persons legally entitled to it.

19. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, we shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. **Substitute Trustee.** We may, at our option, from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by us and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original lender, Trustee and borrower, the book and page where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

21. **Request for Notices.** You request that copies of the notices of default and sale be sent to your address which is the Property Address.

CALNDT                                    Page 5 of 7

**22.   Statement of Obligation Fee.** We may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

**23.   Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Deed of Trust under the provisions of Section 18, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Deed of Trust.

**24.   Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Deed of Trust or in the note secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision of covenant at any other time.

**25.   Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Deed of Trust upon full repayment of all sums secured thereby.

**26.   Riders to this Deed of Trust.** If one or more riders are executed by you and recorded together with this Deed of Trust, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were a part of this Deed of Trust. [Check applicable box(es)]

☐ Condominium Rider                     ☐ 1-4 Family Rider

☐ Planned Unit Development Rider        ☐ Other(s) _____

BY SIGNING BELOW, You accept and agree to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by you and recorded with it.

Signed, sealed and delivered in the presence of:

_____                                    _____ (Seal)

Witness:                                                         **RICK YU**


(Seal) _____                             _____ (Seal)

                                                                **SERLYN L. YU**


(Seal)_____                             _____ (Seal)

(Seal)_____                             _____ (Seal)

_____                                    _____ (Seal)

_____                                    _____ (Seal)


STATE OF CALIFORNIA,                                )
COUNTY OF *Santa Clara*                             ) ss:
                                                    )

On this *28th* day of *Feb*_____, *2001*___before me *Lynal M. Kirk*_____,
a notary public in and for said county and state, personally appeared *Rick Yu and*
*Serlyn L. Yu*_____ ( ) personally known to me or ( ) proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of
which the person(s) acted, executed the instrument.

    IN WITNESS WHEROF, I have hereunto set my hand and official seal the day and year first above
written.

(Seal)

**LYNAL M. KIRK**
COMM. 1228060
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires July 24, 2003.

_____
                                                                Notary Public


CALNDT                              Page 7 of 7

EXHIBIT "A"

All that certain Real Property in the City of San Jose, County of Santa Clara, State of California, described as follows:

All of Lot 59, as shown upon that certain Map entitled, "Tract No. 6474", which Map was filed for Record in the Office of the Recorder of the County of Santa Clara, State of California, on May 1, 1979, in Book 440 of Maps, at Page(s) 45, 46 and 47.

STATE OF CALIFORNIA } SS.
County of Santa Clara

    I, REGINA ALCOMENDRAS, Clerk Recorder of the above
entitled County, do hereby certify that the annexed is a full, true
and correct copy of the original CALIFORNIA
CLOSED-END DEED OF TRUST
recorded in my office.
    WITNESS my hand and Official Seal this

17 day of MAY 2008

By _____, Deputy

Venessa Reed

1604018

Submitted for recordation by, and when recorded,
return to:



| | |
|---|---|
| Branch | POST CLOSING REVIEW #1255 |
| Address | P.O. BOX 2314 |
| City | RANCHO CORDOVA |
| State | CA |
| Zip | 95741 |
| Loan #: | 0250018508749698 |
| Reference # | 010102-011581359030 |

DOCUMENT: 15732854

*0015732854*

Titles:1 / Pages: 2

| | |
|---|---|
| Fees.... | 12.00 |
| Taxes... | |
| Copies.. | |
| AMT PAID | 12.00 |

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Old Republic Title Company

RDE # 003
6/20/2001
8:00 AM

Space above this line for Recorder's Use

# SHORT FORM DEED OF TRUST
## (EQUITY MAXIMIZER® ACCOUNT)

This Deed of Trust is made on __18th June, 2001__ by _____

__RICK YU AND SERLYN YU, WHO ARE MARRIED TO EACH OTHER__

_____

_____

(collectively and individually "Trustor"); Equitable Deed Company ("Trustee"); and the beneficiary, Bank of America, N.A. ("Bank"). Trustee is a subsidiary of Bank. Any non-titleholder signs below as Trustor solely for the purpose of subjecting any community property interest in the property described below to this Deed of Trust. The words "I," "me," and "my" in this Deed of Trust refer to the Trustor, whether one or more.

Bank and I agree:

**1. Property Security.** For the purpose of securing the obligations described below, I irrevocably grant, convey, transfer and assign to Trustee, in trust with power of sale, the property located in _____

__SANTA CLARA_____ County, California described as follows:

LOT 11, MAP OF TRACT NO. 9162, FILED SEPTEMBER 09, 1999, MAP BOOK 718, PAGE 53-55, SANTA CLARA COUNTY RECORDS. THIS DEED IS MADE AND ACCEPTED UPON THE COVENANTS, CONDITIONS AND RESTRICTIONS AND OTHER MATTERS SET FORTH IN THAT CERTAIN DECLARATION OF RESTRICTIONS RECORDED 8/8/00 AS INSTRUMENTS NO. 15347954, OFFICIAL RECORDS OF SAID COUNTY, ALL WHICH COVENANTS, CONDITIONS AND RESTRICTIONS AND OTHER MATTERS ARE INCORPORATED HEREIN BY REFERENCE TO SAID DECLARATION OF RESTRICTIONS WITH THE SAME FORCE AND EFFECT AS THOUGH FULLY SET FORTH HEREIN. APN 783-35-085

with the street address: __8940 CALLE DEL REY, GILROY, CA 95020_____

and with Parcel No. __783-35-085_____ and including all improvements and fixtures now or later erected on the property, and all easements, rights, appurtenances and fixtures now or later a part of or related to the above described property (collectively the "Property").

**2.   This Deed of Trust secures :**

- All obligations of the borrowers in the Equity Maximizer Agreement and Disclosure, dated ___06/18/01___ and naming __RICK YU AND SERLYN YU_____

   _____ as borrowers, for a revolving line of credit account (the "Agreement"), as well as any modifications and renewals of the Agreement. The Agreement provides for a Total Credit Commitment (as defined in the Agreement) of $ __100,000.00_____, allows for repeated credit advances drawn against the Total Credit Commitment, and provides for a variable interest rate. By mutual agreement, Bank may increase the Total Credit Commitment ("Increased Credit Commitment"); and

- Trustor's performance of each obligation in this Deed of Trust.

CLS-776-1-CA/0007  9-00                    Page 1 of 2                    Bank of America

This Deed of Trust will not secure borrowers' obligations under the Agreement in excess of the Total Credit Commitment or Increased Credit Commitment, except for any amounts due to: (a) unpaid interest, or (b) expenses that Bank incurs because obligations of a borrower under the Agreement are not fulfilled (including without limitation, any advances that Bank makes to perform borrowers' duties to pay taxes, insurance, etc.).

**To Protect the Security of this Deed of Trust, I Agree:** By the execution and delivery of this Deed of Trust and the Equity Maximizer Agreement and Disclosure secured hereby, that provisions (3) to (20), inclusive of the fictitious deed of trust recorded in ___SANTA CLARA___ County ___07/15/99___, as Instrument ___14895706___ in Book/Reel and at Page/Image ___ of the Official Records of the County Recorder of that county, (which provisions, identical in all counties, are printed on the following pages) hereby are adopted and incorporated herein and made a part hereof as though set forth at length; and I will observe and perform such provisions; and that the reference to Property, obligations, and parties in such provisions shall be construed to refer to the Property, obligations, and parties set forth in this Deed of Trust.

Trustor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE under this Deed of Trust be mailed to Trustor at the Trustor's address shown below, or if no address is shown, then at the address of the Property.

Signature

RICK YU

SERLYN YU

Mailing Address for Notices:
Street                    City and State

8940 CALLE DEL REY GILROY, CA 95020

## GENERAL ACKNOWLEDGMENT

State of California
County of ___SANTA CLARA___

On ___JUNE 18, 2001___ before me, ___CARMEN B. LUZ___, personally appeared ___RICK YU AND SERLYN YU___ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ___Carmen B. Luz___ (SEAL)

CARMEN B. LUZ
Commission # 1186085
Notary Public - California
San Francisco County
My Comm. Expires Jun 6, 2002

CLS-776-2-CA/0007  9-00                    Page 2 of 2                    Bank of America

STATE OF CALIFORNIA } SS.
County of Santa Clara

    I, REGINA ALCOMENDRAS, Clerk Recorder of the above
entitled County, do hereby certify that the annexed is a full, true
and correct copy of the original

_SHORT FORM   DEED OF TRUST_

recorded in my office.
    WITNESS my hand and Official Seal this

_7 Th_ day of _MAY_, _2008_

By ___JMCabaluna___, Deputy

Jennys Cabaluna

First American Title Co.
Escrow # 4318-144458 / 2206A7A1-LA

Recording Requested By:

Return To:
VirtualBank, a Division of
Lydian Private Bank
3801 PGA BLVD, SUITE 700
PALM BEACH GARDENS, FL
33410

Prepared By:
TEJADA, THERESA, 3801 PGA
BLVD, SUITE 700, PALM BEACH
GARDENS, FL 33410

DOCUMENT: 17861486

Pages 21

Fees. 69.00
Taxes
Copies
AMT PAID 69 00

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
First American Title Company

RDE # 011
6/23/2004
8:00 AM

—————————[Space Above This Line For Recording Data]—————————

# DEED OF TRUST

### DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated June 17, 2004
together with all Riders to this document.
**(B) "Borrower"** is RICK YU AND SERLYN YU, HUSBAND AND WIFE, AS JOINT TENANTS

Borrower's address is 8940 CALLE DEL REY, GILROY, CA 95020
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is VIRTUALBANK, a Division of Lydian Private Bank

Lender is a A Federal Savings Bank
organized and existing under the laws of United States of America

CA 3111                                               33333333337521

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01

VMP -6(CA) (0207)
Page 1 of 15               Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 3801 PGA BLVD, SUITE 700, PALM BEACH GARDENS, FL  33410

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is FIRST AMERICAN TITLE COMPANY

(E) "Note" means the promissory note signed by Borrower and dated June 17, 2004
The Note states that Borrower owes Lender FIVE HUNDRED FOUR THOUSAND SEVEN HUNDRED
FIFTY and NO/100                                                              Dollars
(U.S. $ 504,750.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 01, 2034
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider    [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider         [x] Other(s) [specify]
                                                                 INTEREST ONLY RIDER

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

CA 3111                                                                    3333333337521
VMP®-6(CA) (0207)              Page 2 of 15              Initials:          Form 3005  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
                 COUNTY                    of              SANTA CLARA                    :
          [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
    SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 783-35-085-00                          which currently has the address of
8940 CALLE DEL REY                                                            [Street]
GILROY                                      [City], California 95020          [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

CA 3111                                                                 33333333337521

-6(CA) (0207)                  Page 3 of 15          Initials           Form 3005  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

CA 3111

-6(CA) (0207)                     Page 6 of 15          Initials: _____          33333333337521          Form 3006   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

CA 3111                                                                   3333333337521

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CA 3111

33333333337521

-6(CA) (0207)                          Page 12 of 15        Initials:            Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                    RICK YU                            -Borrower

_____                    _____ (Seal)
                                                    SERLYN YU                          -Borrower

                                    _____ (Seal)   _____ (Seal)
                                                    -Borrower                          -Borrower

                                    _____ (Seal)   _____ (Seal)
                                                    -Borrower                          -Borrower

                                    _____ (Seal)   _____ (Seal)
                                                    -Borrower                          -Borrower

CA 3111

-6(CA) (0207)                    Page 14 of 15                    Form 3005   1/01

33333333337521

State of California
County of SANTA CLARA                                  } ss.

On 6/17/04                    before me, Lynn L. Cogliandro
                                                        personally appeared

Rick Yu and Serlyn Yu

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

```
LYNN L. COGLIANDRO
Commission # 1485304
Notary Public - California
Santa Clara County
My Comm. Expires Apr 23, 2008
```
_____ (Seal)

CA 3111

-6(CA) (0207)                    Page 15 of 15                 Initials: ____    33333333337521
                                                                                Form 3005  1/01

# ADJUSTABLE RATE RIDER
**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 17th                day of June,  2004            ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to **VIRTUALBANK, a Division of Lydian
Private Bank**

("Lender") of the same date and covering the property described in the Security Instrument and
located at: **8940 CALLE DEL REY, GILROY, CA  95020**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of                **4.1250**%. The Note provides for
changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of July,  2007                        ,
and on that day every **6**                month thereafter.  Each date on which my interest rate could change
is called a "Change Date."

CD 2037                                                          33333333337521
MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN  *THE WALL STREET
JOURNAL*) -Single Family-Fannie Mae Uniform Instrument

-838R (0006)        Form 3138 1/01
Page 1 of 4            Initials:
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One Half

( 2.5000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 6.1250 % or less than 2.5000%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One

( 1.0000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 10.1250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

CD 2037

LMD-838R (0006)

Page 2 of 4

Initials

33333333337521

Form 3138 1/01

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CD 2037

3333333337521

838R (0006)                    Page 3 of 4                    Initials: _____    Form 3138 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
RICK YU                   -Borrower

_____ (Seal)
SERLYN YU                 -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

CD 2037

33333333337521

VMP-838R (0006)                Page 4 of 4                Form 3138 1/01

# INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER:  33333333337521

PROPERTY ADDRESS:  8940 CALLE DEL REY, GILROY, CA  95020

**THIS ADDENDUM** is made this 17th day of June, 2004 , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to VIRTUALBANK, a Division of Lydian Private Bank , A Federal Savings Bank (the Lender).

**THIS ADDENDUM** supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One Half percentage point(s)  (2.5000 ) to the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%)  Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interrest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

| | |
|---|---|
| /_____  6/17/04 | /_____  6/17/04 |
| Borrower                        Date | Borrower /                       Date |
| RICK YU | SERLYN YU |
| | |
| _____  _____ | _____  _____ |
| Borrower                        Date | Borrower                        Date |
| | |
| _____  _____ | _____  _____ |
| Borrower                        Date | Borrower                        Date |

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER

ORDER NO: 2266541
REFERENCE NO: YU
ESCROW OFFICER: LYNN COGLIANDRO
ESCROW NO: 1444581
UPDATE AS OF MAY 25, 2004

## DESCRIPTION

THE LAND REFERRED TO IN THIS DESCRIPTION SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF SANTA CLARA, CITY OF GILROY, AND IS DESCRIBED AS FOLLOWS:

LOT 11, MAP OF TRACT NO. 9162, FILED SEPTEMBER 9, 1999, MAP BOOK 718, PAGE 53-55, SANTA CLARA COUNTY RECORDS.

783-35-085

Recording Requested By:

*Old Republic* 

Return To:
**WACHOVIA MORTGAGE CORPORATION**
**1100 Corporate Center Dr (NC4723)**
**Raleigh, NC 27607**

DOCUMENT: 18070306

Pages: 22

| Fees .. | 72 00 |
|---|---|
| Taxes.. | |
| Copies.. | |
| AMT PAID | 72 00 |

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Old Republic Title Company

RDE # 009
10/28/2004
2:19 PM

Prepared By:

0621000951-KA

―――――――――――[Space Above This Line For Recording Data]―――――――

# DEED OF TRUST

MIN 100013700075558864

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **October 19, 2004** together with all Riders to this document.

**(B) "Borrower"** is **RICK   YU AND ,SERLYN L YU, HUSBAND AND WIFE**

Borrower's address is **3486 RAINWOOD COURT   , SAN JOSE, CA 95148**
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **WACHOVIA MORTGAGE CORPORATION**

Lender is a **A Corporation**
organized and existing under the laws of **NORTH CAROLINA**

**7555886-00**

―――――――――――――――――――――――――――――――――――――――――――

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

VMP ®-6A(CA) (0207)
Page 1 of 15        Initials:

VMP MORTGAGE FORMS - (800)521-7291



Lender's address is
**1100 Corporate Center Dr., Raleigh, NC 27607-5066**
**(D) "Trustee" is CHRISTOPHER D. DAVIES**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **October 19, 2004**
The Note states that Borrower owes Lender
**Four Hundred Thirty-Two Thousand and No/100**                                        Dollars
(U.S. $  **432,000.00**  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 1, 2034**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

**INTEREST ONLY PAYMENTS RIDER**

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

**7555886-00**

VMP® -6A(CA) (0207)                    Page 2 of 15                                   **Form 3005 1/01**

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **SANTA CLARA**                                     :

        [Type of Recording Jurisdiction]                                     [Name of Recording Jurisdiction]

**SEE SCHEDULE A ATTACHED HERETO AND MADE A PART HEREOF**

Parcel ID Number: **654-50-067**                          which currently has the address of
**2846 RAINWOOD COURT**                                                                    [Street]
**SAN JOSE**                                             [City], California **95148**          [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                          Page 3 of 15                          Initials _____  **7555886-00**
                                                                              Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

7555886-00

Initials

Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

-6A(CA) (0207)                                    Page 9 of 15                    Initials ___    7555886-00                    Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
RICK    YU                                        -Borrower

_____

_____ (Seal)
SERLYN L YU                                   -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

State of California
County of Santa Clara
On Oct. 22, 2004          before me,  Kori L. Andersen } ss.

personally appeared

Rick Yu and Serlyn L. Yu

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Kori L Andersen_ (Seal)

```
KORI L. ANDERSEN
COMM. #1336615
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires December 27, 2005
```

Order No. : 0621000951-KA

# EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to is situated in the State of California, County of Santa Clara, City of San Jose, and is described as follows:

LOT 59, as delineated upon that certain Map entitled "Tract No. 6474", filed for record in the Office of the Recorder of the County of Santa Clara, State of California, on May 1st, 1979 in Book 440 of Maps, at Page 45.

654-50-067
17 028
GC/GI/dot
T440-45-059
UPD ag 10/14/04

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **19th** day of **October, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note "Note") to

**WACHOVIA MORTGAGE CORPORATION**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**2846 RAINWOOD COURT, SAN JOSE, CA 95148**

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of **4.8750** %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **November , 2009** , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR- Single Family-** **7555886-00**
Fannie Mae Uniform Instrument

VMP®-168R (0401)   Form 3187 6/01
Page 1 of 4   Initials: 
VMP Mortgage Solutions
(800)521-7291

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and One-Quarter** percentage points ( **2.2500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.8750** % or less than **2.2500** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **9.8750** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Init.



7555886-00

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
RICK   YU                  -Borrower

_____ (Seal)
SERLYN L YU                -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

7555886-00

-168R (0401)          Page 4 of 4          Form 3187 6/01

# INTEREST ONLY PAYMENTS RIDER

THIS INTEREST ONLY PAYMENTS RIDER is made this **19th** day of **October, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed and any incorporated Fixed/Adjustable Rate Rider or Adjustable Rate Rider (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note or Adjustable Rate Note (the "Note") to **WACHOVIA MORTGAGE CORPORATION**                                    ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**2846 RAINWOOD COURT, SAN JOSE, CA  95148**
[Property Address]

**AN ADDENDUM ATTACHED TO THE NOTE CONTAINS PROVISIONS WHICH ALLOW THE PAYMENT OF INTEREST ONLY AT A VARIABLE RATE DURING AN INITIAL PORTION OF THE LOAN TERM.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument as amended if applicable by any Fixed/Adjustable Rate Rider or Adjustable Rate Rider, Borrower and Lender further covenant and agree as follows

**A.    PAYMENTS:** Section 3(A) and Section 3(B) of the Note are amended as follows:

**3.    PAYMENTS:**

**(A)    Time and Place of Payments**

I will make a payment every month.  This payment will be for interest only for the first    **120** months, and thereafter will consist of principal and interest.

I will make my monthly payment on the first day of each month beginning on **December 1, 2004**    .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest it will be applied to interest before principal.  If, on **November 1, 2034**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1100 Corporate Center Dr., Raleigh, NC 27607-5066** or at a different place if required by the Note Holder.

**(B)    Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $    **1,755.00**    . This amount may change.

**B.    INTEREST RATE AND MONTHLY PAYMENT CHANGES:** Section 4(C) of the Note is amended as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES:**

**(C)    Calculation of Changes**

Multistate Interest Only Payments Rider
243556 (rev01) (04/02)                Page 1 of 2

7555886-00

3556-1

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and One-Quarter** percentage points ( **2.2500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment, which during the first **120** months of my loan will be the interest on the amounts actually outstanding and unpaid on the first day of the preceding month at my new interest rate, and thereafter will consist of principal and interest in an amount sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**C.    BORROWER'S FAILURE TO PAY AS REQUIRED:** Section 7(A) of the Note is amended as follows and Section 7(F) is appended:

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **05** % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(F)    Termination of Interest Only Payments**

Upon default, the Note Holder, at its option, may require me to immediately begin making payments of principal and interest as stated in Sections 3 and 4 of the Note and in an amount sufficient to pay the outstanding balance in full on the stated Maturity Date. If the Note Holder elects this option, the Note Holder will deliver or mail a written notice to me of the new monthly payment at least 30 days prior to the due date of the new monthly payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| RICK    YU    - Borrower | SERLYN L YU    - Borrower |
| _____ (Seal) | _____ (Seal) |
| - Borrower | - Borrower |
| _____ (Seal) | _____ (Seal) |
| - Borrower | - Borrower |
| _____ (Seal) | _____ (Seal) |
| - Borrower | - Borrower |

STATE OF CALIFORNIA } SS.
County of Santa Clara

I, REGINA ALCOMENDRAS, Clerk Recorder of the above
entitled County, do hereby certify that the annexed is a full, true
and correct copy of the original

DEED OF TRUST

recorded in my office.
WITNESS my hand and Official Seal this

7TH day of MAY , 2008

By _JM Cabaluna_ , Deputy

Jennys Cabaluna

**When Recorded Mail To:**



Southpointe Plaza II
Suite 300
380 Southpointe Blvd.
Canonsburg, PA 15317
(800) 920-0050

*TC 6030 733*

**This Instrument Was Prepared By:**
RAKHI PEDNEKAR
Citibank
P.O. Box 790017, MS 221
St. Louis, MO 63179
(800) 925-2484

| | |
|---|---|
| DOCUMENT: 18174994 | Pages: 8 |
| | Fees.... 44.00 |
| | Taxes. . |
| | Copies . _____ |
| | AMT PAID 44.00 |

BRENDA DAVIS                         RDE # 008
SANTA CLARA COUNTY RECORDER          1/04/2005
Recorded at the request of           4:03 PM
Recording Service

## Home Equity Line of Credit DEED OF TRUST
### ACCOUNT NO.: 104101306629000

In this Deed, "You", "Your" and "Yours" means, <u>RICK YU and SERLYN L YU, HUSBAND AND WIFE, AS JOINT TENANTS,</u> of <u>2846 RAINWOOD CT, SAN JOSE, CA 95148</u>, each person signing as trustor. "We," "Us" and "Our" means CITIBANK (WEST), FSB ("beneficiary"), One Sansome St., San Francisco, CA 94104. The "Trustee" means Citibank Service Corporation, One Sansome St., San Francisco, CA 94104 or any successor appointed pursuant to Paragraph 26 of this Deed of Trust. The "Borrower" means the individual(s) who has(ve) signed the Home Equity Line of Credit Agreement and Disclosure (the "Agreement") of even date herewith and in connection with this Deed of Trust.

The "Property" means the real estate, including the leasehold (if any), located at <u>2846 RAINWOOD CT, SAN JOSE, CA 95148</u> and having the legal description attached to and made a part of this Deed of Trust.

THIS MORTGAGE between You, Trustee and Us is made as of the date next to Your first signature below and has a final maturity date 30 years from such date.

The Agreement provides that the credit secured by the Property is an open-end revolving line of credit at a variable rate of interest. The maximum amount of all loan advances made to the Borrower under the Agreement and which may be secured by this Deed of Trust may not exceed $50,000.00 (the "Credit Limit"). At any particular time, the outstanding obligation of Borrower to Us under the Agreement may be any sum equal to or less than the Credit Limit plus interest and other charges owing under the Agreement and amounts owing under this Deed of Trust. Obligations under the Agreement, Deed of Trust and any riders thereto shall not be released even if all indebtedness under the Agreement is paid, unless and until We cause a reconveyance of the Property to be executed to You and such reconveyance is properly recorded.

TO SECURE to Us: (a) the payment and performance of all indebtedness and obligations of the Borrower under the Agreement or any modification or replacement of the Agreement; (b) the payment of all other sums advanced in accordance herewith to protect the security of this Deed of Trust, with finance charges thereon at the variable rate described in the Agreement; and (c) the payment of any future advances made by Us to Borrower (pursuant to Paragraph 16 of this Deed of Trust (herein "Future Loan Advances")) and, in consideration of the indebtedness herein recited and the trust herein created, You hereby irrevocably grant and convey to Trustee, in trust, with, if allowed by applicable law, power of sale, the Property.

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to You to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights and water stock, and all fixtures now or hereafter attached to the Property (which, if this Deed of Trust is on a unit in a condominium project or planned unit development, shall include the common elements in such project or development associated with such unit), all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property.

**Deed of Trust, continued**

**citibank®**

IN WITNESS WHEREOF, YOU HAVE EXECUTED THIS DEED OF TRUST, AND AGREE TO BE BOUND BY ALL TERMS AND CONDITIONS STATED ON PAGES 2 THROUGH 6 FOLLOWING.

| | 11/26/2004 | | 11/26/2004 |
|---|---|---|---|
| Trustor: **RICK YU** | | Trustor: **SERLYN L YU** | |
| [X] Married | [ ] Unmarried | [X] Married | [ ] Unmarried |

| | | | |
|---|---|---|---|
| Trustor: | | Trustor: | |
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |

| | | | |
|---|---|---|---|
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |

STATE OF CALIFORNIA
COUNTY OF <u>SANTA CLARA</u>

On <u>11/26/2004</u>, before me, <u>HOLLIS J. O'BRIEN, NOTARY PUBLIC</u>
personally appeared **RICK YU and SERLYN L YU** ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the same person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Signature of Person Taking Acknowledgement)

> HOLLIS J. O'BRIEN
> COMM. #1411438
> Notary Public-California
> SANTA CRUZ COUNTY
> My Comm. Exp. April 15, 2007

*HOLLIS J. O'BRIEN*
(Signature of Person Taking Acknowledgement Typed, Printed or Stamped)

You covenant that You are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant, and convey the Property, and that the Property is unencumbered, except for the encumbrances of record and any first deed of trust. You covenant that You warrant and will defend generally the title to the Property against all claims and demands, except those disclosed in writing to Us as of the date of this Deed of Trust.

You and We covenant and agree as follows:

1. **Payment of Indebtedness.** Borrower shall promptly pay when due the indebtedness secured by this Deed of Trust including, without limitation, that evidenced by the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Us under the Agreement will be applied to the principal balance and any finance charges, late charges, collection costs, and other charges owing with respect to the indebtedness secured by this Deed of Trust in such order as We may choose from time to time.

**Deed of Trust, continued**                                    citibank®

3. **Charges; Liens.** Except as expressly provided in this Paragraph 3, You shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any, by Your making payments, when due, directly to the payee thereof. In the event You make payments directly to the payee thereof, upon Our request You shall promptly furnish to Us receipts evidencing such payment.

You shall make payments, when due, on any indebtedness secured by a deed of trust or other lien that is prior in right time to this Deed of Trust (a "Prior Deed of Trust"). You shall promptly discharge the lien of any Prior Deed of Trust not disclosed to Us in writing at the time of application for the Agreement, provided, however, that You shall not be required to discharge any such lien so long as You shall (a) in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof, or (b) secure from the holder of such prior lien an agreement in form and substance satisfactory to Us subordinating such lien to the Deed of Trust. You shall not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without Our prior written consent. You shall neither request nor allow any future advances to be secured by a Prior Deed of Trust without Our prior written consent.

4. **Hazard Insurance.** You shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as We may require (including flood insurance coverage, if required by Us) and in such amounts and for such periods as We may require. Unless We require in writing otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy. All insurance policies and renewals thereof shall be in form and substance and with carriers acceptable to Us and shall include a standard mortgage clause in favor of and in form and substance satisfactory to Us. In the event of loss, You shall give prompt notice to the insurance carrier and Us. We may make proof of loss if not made promptly by You.

If the Property is abandoned by You, or if You fail to respond to Us within thirty (30) days from the date the notice is mailed by Us to You that the insurance carrier offers to settle a claim for insurance benefits, We are authorized to collect and apply the insurance proceeds at Our option either to restoration or repair of the Property, or to sums secured by this Deed if Trust.

If the Property is acquired by Us under Paragraph 14 of this Deed of Trust, all of Your right, title and interest in and to any insurance policies, and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition, shall pass to Us to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

The provisions of this Paragraph 4 shall be subject to the provisions of Paragraph 5 if this Deed of Trust covers a unit in a condominium project or planned unit development.

5. **Preservation and Maintenance of Property; Condominiums and Planned Unit Developments.** If this Deed of Trust is on a unit in a condominium or a planned unit development (herein "Condominium Project"), then: (a) You shall perform all of Your obligations under the declaration or covenants creating or governing the Condominium Project, the by-laws and regulations of the Condominium Project, and all constituent documents (herein "Project Documents"), including the payment when due of assessments imposed by the homeowners association or other governing body of the Condominium Project (herein "Owner's Association"); (b) You shall be deemed to have satisfied the insurance requirements under Paragraph 5 of this Deed of Trust if the Owners Association maintains in full force and effect a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage" and such other hazards (including flood insurance) as We may require, and in such amounts and for such periods as We may require naming Us as additional loss payee; (c) the provisions of any Project Documents regarding the application of any insurance proceeds from "master" or "blanket" policies covering the Condominium Project shall supersede the provisions of Paragraph 4 of this Deed of Trust to the extent necessary to avoid conflict between the provisions thereof and hereof; (d) You hereby assign to Us the right to receive distributions on account of the Property under "master" or "blanket" policies covering the Condominium Project to the extent not applied to the restoration or repair of the Property, with any such distributions in excess of the amount necessary to satisfy in full the obligations secured by this Deed of Trust being paid to You; (e) You shall give Us prompt written notice of any lapse in any insurance coverage under a "master" or "blanket" policy on the Condominium Project; and (f) You shall not, without Our prior written consent, consent to either (i) the abandonment or termination of the Condominium Project (except for the abandonment or termination provided by law in the case of substantial destruction by fire or other casualty or in the case of a taking or condemnation or eminent domain), (ii) any material amendment to the Project Documents (including any change in the percentage interests of the unit owners in the Condominium Project), or (iii) the effectuation of any decision by the Owners Association to terminate professional management and assume self-management of the Condominium Project. If the Property has rental units, You shall maintain insurance against net loss in addition to the other hazards for which insurance is required herein.

6. **Protection of Our Security.** If You fail to perform Your obligations under this Deed of Trust, or if any action or proceedings adversely affects Our interest in the Property, We may, at Our option, take any action reasonably necessary (including, without limitation,

## Deed of Trust, continued

**citibank**®

paying expenses and attorney fees and to have entry upon the Property to make repairs) to perform Your obligations or to protect Our interests. Any amounts disbursed by Us pursuant to this Paragraph 6, with interest thereon at the variable rate described in the Agreement, shall become indebtedness secured by this Deed of Trust (except as expressly provided herein). Nothing contained in this Paragraph 6 shall require Us to incur any expense or take any action hereunder.

**7. Inspection.** We or Our agents may enter and inspect the Property, after giving You reasonable prior notice.

**8. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Us. Neither Borrower nor You will be relieved of any obligation to make payments if We apply the award received to the outstanding balance owed.

If You abandon the Property, or if, after notice by Us to You that the condemnor offers to make an award or settle a claim for damages, You fail to respond to Us within thirty (30) days after the date such notice is mailed, We are authorized to collect and apply the proceeds in the same manner as provided in Paragraph 4 hereof.

**9. Forbearance Not a Waiver.** Any forbearance by Us in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy in the future. Any waiver by Us must be in writing and signed by Us.

**10. Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, Your and Our respective successors and assigns, subject to the provisions of Paragraph 13 hereof. All Your covenants and agreements shall be joint and several. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

**11. Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to You provided for in this Deed of Trust shall be given by personal delivery or by mailing such notice by first-class postage paid, addressed to You at the address of the Property shown at the beginning of the Deed of Trust or at such other address as You may designate by notice to Us as provided herein, and (b) any notice to Us shall be given by personal delivery or by mailing such notice by certified mail, return receipt requested, to Our address stated herein or to such other address as We may designate by notice to You as provided herein.

**12. Severability.** If any term of this Deed of Trust is found to be unenforceable, all other provisions will remain in full force.

**13. Due on Transfer Provision - Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Our prior written consent, We may, at Our option, require immediate payment in full of all sums secured by this Deed of Trust. However, We shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Deed of Trust. If We exercise this option, We shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, We may invoke any remedies permitted by this Deed of Trust without further notice or demand on You.

**14. Default.** If You breach any term in this Deed of Trust, or if Borrower fails to perform any obligation under the Agreement, We may, at Our option, declare all sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale under this Deed of Trust and any other remedies permitted by law. We may collect from You all reasonable costs incurred in enforcing the terms of this Deed of Trust, including attorney's fees and allocated costs of Our salaried employees.

**15. Assignment of Rents.** As additional security hereunder, You hereby assign to Us the rents of the Property; provided, however, that You shall have, prior to acceleration under Paragraph 14 hereof or abandonment of the Property, the right to collect and retain such rents as they become due and payable.

**16. Future Loan Advances.** Upon Your request, We at Our option may make Future Loan Advances to You or Borrower. Such Future Loan Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by a promissory note or agreement stating that said note or agreement is so secured.

**17. Release.** Upon payment of all sums secured by this Deed of Trust and upon (a) expiration of the Agreement or (b) Your request, We shall release this Deed of Trust and You shall pay all costs of recordation, if any.

**citibank®**

## Deed of Trust, continued

18. **Appointment of Receiver; Lender in Possession.** Upon acceleration under this Deed of Trust or abandonment of the Property; We shall be entitled to have a receiver appointed by a court to enter upon, take possession of, and manage the Property and collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to, receiver's fees and premiums on the receiver's bonds and reasonable attorneys' fees and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

19. **Statement of Obligation.** We may collect a fee for furnishing a statement of obligation in an amount not to exceed the maximum amount permitted under applicable law.

20. **No Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for Our benefit in any capacity, without Our prior written consent.

21. **Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder of the county in which the Property is located with respect to any and all fixtures included within the term "Property" as used in this Deed of Trust and with respect to any goods or other personal property that may now or hereafter become such fixtures.

22. **Third Party Waivers.** In the event that any of You has not also signed the Agreement as Borrower, each of You: (a) agrees that We may, from time to time, without notice to, consent from or demand on You, and without affecting or impairing in any way any of Our rights or Your obligations, (i) renew, extend, accelerate, compromise or change the interest rate or other terms of the Agreement and any promissory note or agreement evidencing a Future Loan Advance, and (ii) accept, waive and release other security (including guarantees) for the obligations arising under the Agreement or any promissory note or agreement evidencing a Future Loan Advance, and (b) waives (i) any right to require Us to proceed against any Borrower or any other person, proceed against or exhaust any security for the obligations secured by this Deed of Trust or pursue any other remedy in Our power whatsoever, (ii) any defense or right against Us arising out of any disability or other defense or cessation of liability of any Borrower for any reason other than full payment, (iii) any defense or right against Us arising out of Our foreclosure upon the Property, even though such foreclosure results in the loss of any right of subrogation, reimbursement or other right You have against any Borrower, (iv) all presentments, diligence, protests, demands and notice of protest, dishonor, and nonperformance, (v) until payment in full of the indebtedness secured by this Deed of Trust, any right of subrogation or the benefit of any security for such indebtedness, and (vi) the benefit of the statute of limitations affecting the Property to the extent permitted by law. Any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to such person shall operate to toll such statute as to You.

23. **Choice of Law.** This Deed of Trust will be governed by and interpreted in accordance with the federal laws of the United States and where not inconsistent with the laws of the State of California, regardless of the state in which You or Borrower resides.

24. **Your Copy.** You shall be given one conformed copy of the Agreement and this Deed of Trust.

25. **Loan Charges Legislation Affecting Our Rights.** If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any such loan charge already collected from You or Borrower which exceeded permitted limits will be refunded to You or Borrower; We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to You or Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge due. If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Deed of Trust unenforceable according to its terms, We may at Our option, require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by Paragraph 14.

26. **Substitute Trustee.** We may, at our Option, from time to time remove the Trustee and appoint a successor Trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor Trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

27. **Reconveyance.** After compliance with all requirements of the Agreement, We shall request the Trustee to reconvey the Property to You. Trustee shall reconvey the Property without warranty. You shall pay any fee legally charged by the Trustee for the issuance of reconveyance and all costs of recordation.

**Deed of Trust, continued**                                           

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR DEED OF TRUST OR MORTGAGE

We and You request the holder of any encumbrance with a lien which has priority over this Deed of Trust give notice to Us, at Our address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the Agreement secured by this Deed of Trust. The Agreement together with all other indebtedness and obligations secured by this Deed of Trust have been paid and performed in full. Trustee is hereby directed to cancel the Agreement and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all estate now held by Trustee to the persons legally entitled thereto.

Date: _____    _____

**Legal Description:**

The following described real property in the City of San Jose, County of Santa Clara, State of California:

Lot 59, as shown on that certain map entitled, "Tract No. 6474", which map was filed for record in the office of the Recorder of the County of Santa Clara, State of California, on May 1, 1979 in Book 440 of Maps Page 45.

Being the same parcel conveyed to Rick Yu and Serlyn L. Yu by deed of Roger R. Sagisi and Rhonda K. Sagisi, husband and wife and Manuel A. Sagisi and Carmelita R. Sagisi, husband and wife, all as joint tenants, recorded June 3, 1992 as Document 11389159 of the Santa Clara County Records.

APN:  654-50-067

# ILLEGIBLE NOTARY SEAL DECLARATION

## (Government Code 27361.7)

I declare under penalty of perjury that the notary seal on the document to which this statement is attached, reads as follows:

NAME OF NOTARY PUBLIC: _Hollis  J.  O'Brien_

COMMISSION NUMBER: _# 1411438_

NOTARY PUBLIC STATE: _CA_

COUNTY: _SANta  CRUZ_

MY COMM. EXPIRES: _April  15-07_
(DATE)

SIGNATURE OF DECLARANT: _Sandra  R. Karbowski_

PRINT NAME OF DECLARANT: _SANDRA  R. KARBOWSKI_

CITY & STATE OF EXECUTION: _SAN  JOSE, CA._

DATE SIGNED: _12-09-04_

THE ABOVE INFORMATION MUST BE LEGIBLE FOR SCANNING

STATE OF CALIFORNIA } SS.
County of Santa Clara

 I, REGINA ALCOMENDRAS, Clerk Recorder of the above
entitled County, do hereby certify that the annexed is a full, true
and correct copy of the original

HELO Credit DEED OF TRUST

recorded in my office.
 WITNESS my hand and Official Seal this

7th day of MAY, 2008

By JMeabon, Deputy

Jennys Cabaluna

**Recording requested by:**
Wells Fargo Bank, N.A.

**When recorded return to:**
Wells Fargo Bank, N.A.
P. O. BOX 31557
BILLINGS, MT 59107

Attn: DOCUMENT MANAGEMENT

DOCUMENT: 18335318                           Pages: 3

Fees           15.00
Taxes
Copies
AMT PAID       15.00

BRENDA DAVIS                    RDE # 010
SANTA CLARA COUNTY RECORDER     4/21/2005
Recorded at the request of      12:10 PM
Bank

State of California                    Space Above This Line For Recording Data
REFERENCE #: 20050761848130     ACCOUNT #: 0651-651-7919247-1998

## SHORT FORM DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Short Form Deed of Trust ("Security Instrument") is 03/18/2005 and the parties are as follows:
**TRUSTOR** ("Grantor"):
RICK YU AND SERLYN YU, HUSBAND AND WIFE, AS JOINT TENANTS

whose address is:
8940 CALLE DEL REY GILROY, CA, 95020
   **TRUSTEE:** **AMERICAN SECURITIES COMPANY**
                    P. O. BOX 31557
                    BILLINGS, MT 59107
   **BENEFICIARY** ("Lender"): **WELLS FARGO BANK, N.A.**
                    P. O. BOX 31557
                    BILLINGS, MT 59107

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, all of that certain real property located in the County of
SANTA CLARA                    ,State of California, described as follows:
LOT 11, MAP OF TRACT NO. 9162, FILED SEPTEMBER 09, 1999, MAP BOOK 718, PAGE 53-55, SANTA CLARA COUNTY RECORDS.

with the address of 8940 CALLE DEL REY  GILROY, CA  95020
and parcel number of 783-35-085                    together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above.

EQ206A (09/2004)

7

3. **MAXIMUM OBLIGATION LIMIT AND SECURED DEBT.** The total amount which this Security Instrument will secure shall not exceed $ 35,250.00 together with all interest thereby accruing, as set forth in the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt ("Secured Debt") of even date herewith, and all amendments, extensions, modifications, renewals or other documents which are incorporated by reference into this Security Instrument, now or in the future. The maturity date of the Secured Debt is 03/18/2046 .

4. **FICTITIOUS DEED OF TRUST.** By the delivery and execution of this Security Instrument, Grantor agrees that all provisions and sections of the Fictitious Deed of Trust, inclusive, dated **February 1, 1997** and recorded on February 6, 1997 as Instrument Number 13602986 in Book N/A at Page N/A of the Official Records in the Office of the Recorder of SANTA CLARA County, State of California, are hereby incorporated into, and shall govern, this Security Instrument.

5. **RIDERS.** If checked, the following are applicable to this Security Instrument. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.

[N/A] Third Party Rider
[N/A] Leasehold Rider
[N/A] Other N/A _____

**SIGNATURES:** By signing below, Grantor agrees to perform all covenants and duties as set forth in this Security Instrument. Grantor also acknowledges receipt of a copy of this document and a copy of the provisions contained in the previously recorded Fictitious Deed of Trust (the Deed of Trust-Bank/Customer Copy). The undersigned Grantor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE hereunder be mailed to the Grantor's address given herein.

| | | |
|---|---|---|
| SERLYN YU | Grantor | 3/30/05 Date |
| RICK YU | Grantor | 05-30-05 Date |
| | Grantor | Date |
| | Grantor | Date |
| | Grantor | Date |
| | Grantor | Date |

EQ206B (09/2004)

**ACKNOWLEDGMENT** (All-Purpose):

STATE OF _California_____, COUNTY OF _Santa Clara_____ } ss.

On _March 30, 2005_____ before me, the undersigned, a Notary Public in and for said State, personally appeared _Seclyn Yu_____ _Rick Yu_____

☐ personally known to me          **-OR-**          ☒ proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

Signature: _Joanne Segovia_____

Name: _Joanne Segovia_____
          (type or printed)

My Commission expires: _Jan, 8, 2009_____          (Seal)

JOANNE SEGOVIA
Commission # 1542646
Notary Public - California
Santa Clara County
My Comm. Expires Jan 8, 2009

EQ206C (09/2004)

STATE OF CALIFORNIA } SS.
County of Santa Clara

I, REGINA ALCOMENDRAS, Clerk Recorder of the above entitled County, do hereby certify that the annexed is a full, true and correct copy of the original

*SHORT FORM DEED OF TRUST*

recorded in my office.
WITNESS my hand and Official Seal this

*7th* day of *MAY* *2008*

By _____, Deputy

Jennys Cabaluna

1 | ADLESON, HESS & KELLY, APC
Phillip M. Adleson, Esq. (SBN 69957)
2 | Duane W. Shewaga, Esq., (SBN 116837)
577 Salmar Avenue, Second Floor
3 | Campbell, California 95008
Telephone:  (408) 341-0234
4 | Facsimile:  (408) 341-0250

5 | Attorneys for Defendants
UTAH FINANCIAL, INC.
6 | DAVID L. SMITH
WAYNE MORRISON

7

8

                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        (San Jose Division)

11

12

13 | RICK YU and SERLYN YU,                    Case No. C 08-01771 RMW

              Plaintiffs,
14                                            **CERTIFICATE OF SERVICE**

15 | vs.                                      **RE: REPLY TO OPPOSITION TO MOTION
                                             TO DISMISS**
16 | UTAH FINANCIAL, INC., erroneously sued
as a California corporation; GREENPOINT
17 | MORTGAGE FUNDING, INC.; DAVID L.          **July 25, 2008**
SMITH, WAYNE MORRISON, et al.,            **9:00 a.m.**
18                                            **Hon. Ronald M. Whyte**
              Defendants.
19

20

21

22

23

24

25

26

27

28

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

C 08-01771 RMW          CERTIFICATE OF SERVICE          PAGE 1

1

## CERTIFICATION OF SERVICE BY MAIL

2

3       I, the undersigned, declare as follows:

4       I am over the age of eighteen years and not a party to the within-entitled action.  I am
employed in Santa Clara County, California, with the law firm of ADLESON, HESS & KELLY,
5  APC.   My business address is 577 Salmar Avenue, Second Floor, Campbell, California,
95008.
6

7       On May 28, 2008, I served upon the interested party(ies) in the action the foregoing
document described as:

8

**DEFENDANT UTAH FINANCIAL INC.'S, DAVID L. SMITH'S AND WAYNE MORRISON'S**
9  **MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'**
**OPPOSITION TO THEIR MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**
10

**DEFENDANT UTAH FINANCIAL INC.'S, DAVID L. SMITH'S AND WAYNE MORRISON'S**
11  **SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION**
**TO DISMISS PURSUANT TO RULE 12(B)(6)**
12

13  [X]    By placing _____ the original  _X_  true copy(ies) thereof enclosed in sealed envelope(s)
addressed to:
14

| | |
|---|---|
| 15  Mark W. Good, Esq. | **For Plaintiffs RICK YU and SERLYN YU** |
| Summer J. Martin, Esq. | |
| 16  TERRA LAW, LLP | |
| 177 Park Avenue, 3rd Floor | |
| 17  San Jose, CA  95113 | |
| T: (408) 288-1200 | |
| 18  F: (408) 998-4895 | |
| 19  Ron M. Arlas, Esq. | **For Defendant GREEN POINT MORTGAGE** |
| Ted Buell, Esq. | |
| 20  ARLAS & SMITHTON | |
| 100 Wood Hollow Drive | |
| 21  Novato, CA  94945 | |
| T: (415) 878-5390 | |
| 22  F: (415) 878-3595 | |
| 23  ron.arlas@greenpoint.com | |
| ted.buell@greenpoint.com | |
| 24 | |

25  [X]    BY MAIL   I deposited such envelope(s) with postage thereon fully prepaid in the
United States mail at a facility regularly maintained by the United States Postal Service at
26  Campbell, California. I am readily familiar with the firm's practice of collecting and processing
correspondence for mailing.  Under the practice it would be deposited with the U.S. Postal
27  Service on that same day with postage thereon fully prepaid at Campbell, California in the
ordinary course of business.  I am aware that on motion of the party served, service is
28

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

C 08-01771 RMW                    CERTIFICATE OF SERVICE                    PAGE 2

1   presumed invalid if postal cancellation date or postage meter date is more than one day after
2   date of deposit for mailing, pursuant to this affidavit.

3   [ ]    WITH CERTIFICATE OF MAILING  A certificate of mailing was obtained from the
    United States Post Office evidencing the mailing referenced above.
4
    [ ]    BY FEDEX  I caused such envelope(s) to be placed for FedEx collection and delivery
5   at Campbell, California.  I am readily familiar with the firm's practice of collection and
    processing correspondence for FedEx mailing.  Under that practice it would be deposited with
6   the FedEx office on that same day with instructions for overnight delivery, fully prepaid, at
    Campbell, California in the ordinary course of business.  I am aware that on motion of the
7   party served, service is presumed invalid if the FedEx delivery date is more than one day
8   after date of deposit with the local FedEx office, pursuant to this affidavit.

9   [ ]    BY FACSIMILE  I caused the transmission of the foregoing document by facsimile to
    the offices of the addressee(s), and such transmission was reported as complete and without
10  error.

11  [ ]    BY PERSONAL SERVICE  I personally served such envelope(s) of the addressee(s)
12  pursuant to CCP § 1011.

13       I declare that I am employed in the office of a member of the bar of this court at whose
    direction the service was made.
14
15       I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.  Executed on May 28, 2008, at Campbell, California.
16

17                                  /s/Tammy Clark
                                    _____
18                                  TAMMY CLARK

19

20

21

22

23

24

25

26

27

28

ADLESON, HESS &
KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0230
WWW.AHK-LAW.COM